Okay, Mr. Volk. May it please the Court. Congress gave very clear and clear instructions for determining. What's the status of this contract, which originally had one year with four option years to it? Where is it? Has the contract been completed? Is it still ongoing? As far as I understand, the contract is ongoing that was awarded to Golden State. So there are different contracts. How many option years have been invoked by the government? I believe at this point it would be the first option year that they're in now. Okay, and is there any indication whether the other option years will be picked up by the government? I don't think there's any indication one way or the other, but it typically is the case that the option years have been exercised by the VA. Unless there's some reason not to, they've continued. So there certainly is the expectation that this CIT case is still hanging. At the request of Acetris, the CIT case has currently stayed for a resolution of this case. So under Kingdom, which also involved a contract with option years, why is this potentially not capable of repetition yet evading review in terms of whether there's a remaining case or controversy? So the Kingdom where discussion of mootness was certainly a very different situation than what was at issue here before the trial court. In Kingdom where the Supreme Court was referring to the years it takes for a case to wind through the appellate process to the Supreme Court, what the Court of Federal Claims was looking at was a procurement that was going on right then and there. There was no concern that the Court of Federal Claims wouldn't be able to receive and decide a protest if Acetris had actually been injured or is actually injured in some future procurement. But the bottom line of this appeal that we don't want to get lost is that Congress gave very clear instructions in the statute as to how to decide what the country of origin is. I don't think they're clear at all. I mean, I think if they're clear, it's that it's the country of origin. It has to be wholly manufactured within the country of origin. And this pill is not wholly manufactured in India. Right. However, what's clear is the statute. And so the statute says that if it is not wholly manufactured, that the test is substantial transformation. And that's why this test is just referred to as the substantial transformation test, because that's the key part of it. That's what's getting disputed. That's what's getting argued. In fact, no pills are manufactured in India, are they? It depends what you mean by manufactured, Your Honor. You don't get a pill from India. Whatever India sends us, it's not a pill. As to the facts here, it's absolutely clear that you're right. The bulk drug substance is what comes from India. It's not in pill form. The pill form is made in New Jersey. And they add other things to it, manufactured here in the United States and elsewhere, perhaps. As described in the CBP ruling, that's correct. But what happened here was that the court lost sight of the statute. And by losing sight of the statute and not giving the statute controlling weight, the statute ruled. Well, how did it explain that? Because it seems to me the statute says wholly manufactured. And you say, no, OK, we've got to go over that, where now it's substantial transformation. The court here said that the statutory rule of origin is just one way to qualify under the statute. But that before even looking at the statute, under the regulations implementing that same statute, the court said there's an alternative way to qualify. And that's what's inconsistent with the statutory scheme. I think some background on what the difference is between the Buy American Act and the Trade Agreements Act, and why the trade agreements. Your position is that this pill is a product of India, right? That's the ruling of CBP form, yes. That's your position here today, right? Yes. Why is this a pill that's a product of India? I don't understand that in light of the statutory definition or in the language of the FAR. So this determination, which is one that CBP made and is for the Court of International Trade to decide, was decided in that because the pill is made from the active pharmaceutical ingredient is what determines the country of origin. And so because that bulk... That's apparently what they said in the CPB, but that's not binding on us, and it doesn't seem to be consistent with the statute. Why is the active ingredient the test as opposed to the pill? And that's for the Court of International Trade to decide. I want to be clear, that's not for this... No, it's for us to decide whether that's right or not. You don't agree that we can decide it? Respectfully, Your Honor, I think you would wait for the Court of International Trade to rule on that, and then potentially this court... Isn't that case state? That case is state. But it's not appealed right now. This appeal is not from the CIT. This appeal is from the Court of Federal Claims, and that's an important distinction. Let's assume we reject the argument you're just making about having to wait for the Court of International Trade. Why is the CPB interpretation of this statute correct? Because it seems to be in conflict with the language of the statute. Well, Your Honor, I don't think it's in conflict at all, and so here's why it's correct. The substantial transformation is your standard. When you look at substantial transformation, the cases have analyzed whether there's a change in the character, use, the essential nature of the chemical. And so CBP, Customs has for many years... How is it substantially transformed in India? The pill doesn't even exist in India. Because it's not about the pill, it's about the bulk drug substance. It's about the intent of the... Why? Why? Because when you buy... So suppose you buy a generic... Not the end product that we're concerned about, the pill. We're not concerned about what India does. We're concerned about what they're selling, which is a pill. Isn't that right? Exactly. But if you buy any number of the different pills, what you're really after is that active ingredient. That's what makes it the pill that you're buying. That's the essential nature, the character or use of the ingredient. If you buy store brand Tylenol versus name brand Tylenol, what you're buying is the active... So you're saying if you import something, it can never be substantially transformed? No, Your Honor. I'm not saying that. Certainly, that's the... That's what I'm hearing. I'm sorry to have not been clear on that. Certainly, you can import components of something, and then the question becomes, is it or isn't it substantially transformed in this country, or was it substantially transformed in the prior country? Does the statute say look for the active ingredient of a pharmaceutical? It's not in the statute. The statute doesn't just apply to pharmaceuticals. It's in the customs ruling, which were exclusively reviewable in our... Maybe that's wrong. I mean, what's the basis for the customs ruling saying that it's the active ingredient? Your Honor, I don't want to suggest at all that that can't be fully reviewed in the Court of International Trade. No, no. We're proceeding on the assumption that we're rejecting that argument, and that it's up to us here and now to make a determination of the construction of the statute. Okay? Please tell me why the statute is concerned with the active ingredient instead of the final product. In other words, we don't care what the CBP said for the purposes of this case. So answer the judge's question. It's because the determination of what is substantial transformation. You look in the cases at what substantial transformation means. What cases? So for example, a recent case from the CIT is Energizer Battery. They looked at is post-importation manufacturing or assembly, is that adequate to make for substantial transformation? There's no case from our court that says you look at the active ingredient, right? That's correct, Your Honor. Okay. So put aside these non-binding cases. What is it in the statute that tells us to look to the active ingredient? I don't have something. There's nothing in the statute that gets that specific as to particular categories of product. But what general language even are you relying on? So if you go to the statute 2518-4B, the country of origin under the Trade Agreements Act, you're looking at the question of substantial transformation. And so you're asking if it has been substantially transformed into a new and different article of commerce with a name, character, or use distinct from that of the article or articles from which it was so transformed. So if you want to go through that list, the name, Intekavir. That's the same. The bulk drug substance is called Intekavir. The pill is called Intekavir. The character. So that's where you get into this technical analysis that CVP did. The Court of Federal Claims wouldn't do in this big protest. The character of it is not changing. The essential chemical makeup of this bulk drug substance is not changing when it gets put into pill form. And then the use. The use is not changing. The use is the same from when it's the bulk drug substance in India to when it's put into the pill for human consumption in the United States. You could take the bulk stuff and get the same result? You can't swallow the bulk stuff, but that doesn't mean the use is different. There wouldn't be any other use for the bulk stuff. But that's how you use it. You use it. What does it mean to use the bulk stuff? You use it to make a pill. The use is for treating hepatitis B. And so that use doesn't change. Suppose we reject this. We say, OK, you're wrong. It's not the active ingredient. It's the pill that's the product. The pill is not a product of India under that assumption, correct? The pill is a product of India. No. Under that assumption, it's a product of India? Why? I can't buy that pill in India, can I? If it's imported back to India. Yeah, unless it's imported back. But that's not the question. Absent the importing back of the very pill that these people are trying to sell to the government, I can't buy that pill. Under the statute, it's a product of wherever the last substantial transformation was. If that was India, no matter where else it goes in the world. Yeah, but we're rejecting, on my hypothetical, we're rejecting your argument that the issue is what the active ingredient was. That the pill is the product. The pill, under that assumption, is not a product of India, correct? I think, Your Honor, you assume the ultimate issue. In that case, I couldn't disagree with you. If you're assuming that the pill is the... Yeah, if I assume the pill is the pill, you lose, right? But, Your Honor, I really would encourage you to carefully consider whether the court should be deciding this now. I haven't not listened to the comments you've made, but I don't even think a citrus is claiming that this decision is for the court right now. They focus on the procuring agency. And that's really the issue here, is whether there was a separate error by the procuring agency. The Court of Federal Claims decided, in a relief to be granted in that procurement, the Court of Federal Claims, nonetheless, decided that in all future procurements by the VA, whether it's pharmaceuticals, whether it involves these parties or not, that the government was misinterpreting the regulations. But it was the court's own interpretation of those regulations that's not consistent with the statute. By saying that the substantial transformation test in the statute is just one possible way to comply with that very same statute, the court is interfering with the statutory scheme. The court didn't recognize that the TAA is comprehensive. Rather than preferences under the Buy American Act, the TAA has an in-or-out scheme. There's so much focus on the waiver of the TAA of the Buy American Act preferences, but it's not the waiver that says the product of India is excluded. It's the prohibition that's also in the statute. Well, you certainly start out in your brief saying that this is an opinion the Court of Federal Claims never should have issued, it upset the law, contradicting the plain language of the TAA, and issuing a broad injunction requiring the Department of Conduct and Analysis under an inapplicable legal statute. The sky really is falling on the Justice Department. I understand that. Well, you're right. Let me shift just for a moment, if I may. Why is the VA delegating to the CBP or CBP, whichever that is, the decision on what the statute requires? Why aren't they doing it themselves? Is there some authority that allows them or orders them to delegate it to the CBP? There's not a requirement that CBP must do it, but it's not irrational for the procuring agency to say, what you're saying doesn't make sense to me. I want a decision from customs. There's nothing irrational about it. Whether it's irrational or not, it's always rational for somebody to pass a tough decision off to somebody else if they can get away with it. The question is, can they get away with it? Why can't, why shouldn't the VA make this decision? It's their problem. It's their contract. There's no question that the VA did make the decision, but they adopted CBP's ruling. But that's no different than suppose CBP's ruling. Come on now, let's not play verbal games. They delegated it to the CBP to make the decision and they said, OK, you make the decision. We're bound by it. Why are they bound by it? It's the same way that if the decision had been affirmed by the Court of International Trade or this Court or the Supreme Court, the procuring agency could certainly rely on it then. Why can't they rely on it just because it's at the administrative stage? They can. It's the law. They can rely on it, but that doesn't mean that we have to wait for the CBP decision before deciding whether they were right. I think as a technical matter, it's 28 U.S.C. 1581E that is why the court should wait. And so that provision says that exclusive jurisdiction to review the CBP decision is in the Court of International Trade. And so that's why it should be that this court would wait for that court to decide the review of that determination. But if we have jurisdiction in this case, and the court below had jurisdiction, and the case was properly brought, and one of the issues is this issue that was already decided in another proceeding, we still get to decide it, right? There's no reason why we have to give the agency's determination deference or refer to it at all. Your Honor, your question identified the critical issue, which is whether the court below in this appeal had jurisdiction at all, and it didn't. That was a major issue that was addressed below and is addressed here. Well, when Judge Blake asked you about it, you moved on to the merits very quickly. I'm sorry, Your Honor. I certainly don't want to minimize the jurisdictional questions that need to be decided. The Court of Federal Claims never had... But assuming we have jurisdiction, do you still have an argument that we shouldn't be considering this issue? Yes, because the jurisdiction would only be with respect to the VA's procurement decision. And so here, the VA was not, and the Court of Federal Claims was not reviewing a VA decision that was what CBP decided. But they didn't have to defer. You agreed in the answer to Judge Plager's questions that the VA could have made its own decision. It just made a discretionary decision to defer to CPB. I don't see any reason why it couldn't. It would be judged under the same standard as all these big protests, which is, was it rational? So if it was rational for CBP to make some different decision, that would be fine. But here, it's clear that CBP wanted to rely on that. I'm sorry, the VA wanted to rely on that decision, and that wasn't irrational. That's the standard. We're out of time, but I wanted to ask you one other question. We have these five questions and answers that arose in connection with this solicitation. Is there any reason to believe that the VA would take a different position about the country of origin here in any future contract? Assuming the Court of Federal Claims injunction was not in place, would the VA take a different position? Not as long as that CBP decision was in place. There's no reason to assume that. But those future procurements weren't before the Court. Okay. I read those five questions and answers, and I think those answers were the most non-responsive answers I've ever seen the government do. They were very brilliant. Just to respond briefly, Your Honor, Citrus was arguing its case in those questions, and the VA said, we're going to follow the law. That's what they said. That was their answer. All right. Mr. Volk, we'll give you two minutes for rebuttal. Okay. Mr. Ruskus? Good morning. May it please the Court, Stephen Ruskus for Citrus. To address your question about the country of origin, the citation read by Mr. Volk, 2518, it does in fact say that the question is, is the product that the government's purchasing exhibit new name, character, and use from the raw ingredient? And we argued at the Court of International Trade that clearly it did, because as Judge Plager has pointed out, the characteristics of a prescription drug product approved as safe and efficacious for administration to a patient are very different from the characteristics of a raw chemical that's only one component of the finished product. But what about jurisdiction? What about the question of mootness? I mean, you don't have any chance of getting this particular contract, right? Because your bid was not the low bid. Our view is twofold on that. One, when we made that bid, we were bidding under a contract that was going to exclude us. We don't know what the bid would have been. Why would you make a different bid? Because if none of the compliant companies submit offers, there's an exception where we would have been the only bidder. You had another problem with your bid, though. You didn't respond to their timing the way they wanted it, and they said you were disqualified on that ground. Yes, as the lower court properly found, that was an incorrect statement in the contracting officer's recitation of the issue because there was no initial quantity. There was no requirement at the time that the contract was let that 100% of the entire supply that would be ordered over a five-year period had to be available at that time. So we'd have to agree with that in order to keep you qualified. That's true. Could you go back to the other question? I'm not understanding your answer. Our principal jurisdictional question. Why is it that there would be a different bid if the solicitation had been different and you qualified for it? If we were going to be competing against the so-called compliant products, we would have to price compete in a different way than if we weren't being allowed to compete in that pool. It's somewhat like a bid under a small business set-aside and a bid under an unrestricted bid. We were going to be in a pool that didn't have anybody in it that had a compliant product. And in the company's experience, typically no one bids unless they have a compliant product. I'm sorry. I'm still not understanding what you're saying. And I think this is important. I don't get it. Why is the bid different depending on whether you're qualified or not qualified or your product is qualified or not qualified? The expected bidders in this procurement were all going to be compliant products, that is, products deemed by the VA to be compliant. Our bid was never going to be compared against those. But you couldn't have gotten the contract. Yes. Under the VA's view of the procurement and under the statute and regulations as written, if there are no bidders of that type, then the last man standing is an offer of a non-compliant product. Those people, but the people who were bidding on supposedly compliant products would still be in the mix. They wouldn't be taken out. Right. We only have a bid at all under the VA's view if none of those people bid, which happens in a large number of government procurement. But they did bid. Right. And therefore, we had to. I don't understand how this hypothetical discussion helps to show jurisdiction in the case isn't moved. Well, our jurisdiction depends on something entirely different, and you're correct about that. We have the same jurisdiction as any other pre-award protester who's protesting an invalid term of solicitation. At the time that we. I'm sure you did initially, but it's clear that you have to have standing throughout the case. There's not. I mean, the court found I'm simply wrong in suggesting that everything's hunky dory as long as you had standing in the beginning. As to that, our view is that it's a threshold gating issue and that there are cases continuing, but that doesn't involve a revisitation of standing. Our view is that you may have to prove the facts that you allege with respect to standing that were merely allegations. And in this case. Well, let's assume we reject that position and we say you had to have standing throughout. And if you've lost standing, there's no longer a case of controversy. Why under that standard is there still a case of controversy here? Because we raise other significant claims that in similar situations have been held to have standing. We raise the second claim, not just the solicitation, which we think puts us in the same position as any other pre-award protester. We also pointed to the five questions and answers, which the lower court properly determined were final agency action that specifically with respect to our product was a product characterization, not a procurement characterization, but a product characterization in connection with the procurement. That means the court of jurisdiction, because it was in connection with the procurement, but as the lower court properly recognized, they told us that they would never consider a set versus product to be compliant because as Mr. Volk said, there was a CBP decision out there, which held that it was the product of product of India. And so just as in weeks where the, the effect of the, the effect of the government's conduct was to make him bid for future procurements that he potentially wouldn't win. And just as in veteran contracting where the fact that the government, the VA, in fact had placed the contractor in a database that not only affected a current procurement that had passed, but also would prohibit him from being a veteran on small business for future procurements. We have a situation where in connection with the procurement, we have a lasting harm, a decision that was going to impact us in, in all subsequent procurements for that product. And that was remained and gave us standing throughout the case. Well, do we have any case that suggests that a ruling like that is reviewable by us? Yes. In, in the, the claims court case, veteran contracting, which was not appealed to the federal circuit, at least in any way that changed the decision. The issue was. That case was appealed to the federal circuit. I thought we read a decision about it. My recollection of the case is that the fundamental holding that there needed to be injunctive relief provided as to the existence of the company's name in the database was necessary to address the harms faced by the company. Because in addition to the procurement about which it originally filed, the protest, the lack that the fact that its name was not on the list was also going to affect all subsequent procurements. That's what happened in this case with respect to the agency action taken by the contracting officer. Our product was typed in connection with the procurement, but it was typed in a way that would have affected the company and all of its subsequent procurements. I think you have a section 1500 problem as well. Do you want to talk about that? Yes. As to section 1500, as Mr. Volk actually argued on our behalf, the case that we filed is not about what was happening at CBP. It was about what the contracting officer did after, in fact, we filed the case at CBP. Our central contention in the bid protest is that the contracting officer has to do something other than simply assess the country of origin under the TAA. The FAR part 25 instructs him to treat our product equal to a designated country end product or treat a designated country end product equal to a domestic product. And therefore, you can't simply exclude a product that's a domestic product. And our case is about the fact that the contracting officer said, I don't need to consider whether your product is a domestic product. Because when the TAA applies, no aspect of the BAA applies. So that was clearly not before CIT. And the facts necessary to prove that are, in fact, did the contracting officer consider or not consider whether the product was a domestic product? And the law to be applied to that was, is it correct not to consider whether the product qualifies as a domestic product? The law is irrelevant to deciding whether there is an overlap between the CIT case and the Court of Federal Claims case on the operative facts. Law is not a fact. Precisely. We need to look at the operative facts. So the operative facts. What are the operative facts in the CIT case? The operative fact in the CIT case is, where was the source of each of the raw materials? And where was the processing that occurred to make a prescription drug? And what was the scientific, essentially, impact of the processing on the finished products? OK. What were the operative facts in the Court of Federal Claims case? Did the contracting officer decide whether the product was a domestic product or not? That's a question of law. What are the facts? No, no. Pardon me, Your Honor. As a matter of fact, does the record reflect a consideration by the contracting officer of whether the company's product was a domestic product? And as a matter of fact, the claims court found that the record contained no suggestion that the contractor considered whether there was a contract. In fact, not only is there no record of that in the record, but the five questions and answers which you characterized, if I may paraphrase this cryptic, said we don't consider that when the TAA covers the agreement. Because when the TAA applies, the BAA does not. And that was incorrect in our view. And as a factual matter, the lower court properly agreed with us that the contracting officer made no such determination. The second fact was, since we were arguing with respect to invalid solicitation terms, as a matter of fact, what did the solicitation say? And of course, the legal question, which is not relevant to 1500, is was what the solicitation said improper or not? And we allege that, as a matter of fact, the language of the solicitation, as a matter of fact, was improper, existed. And the lower court properly found, having read that language, that it was exactly where we said it was. It was not in some draft RFP or it wasn't in some request for information. It was contained in the RFP that we were subject to. And then she made a legal ruling that it shouldn't have been because it was inconsistent with the FAR provisions requiring how the contract should be treated. So our view with respect to the merits of the case is, and we've noted this throughout the proceedings, both below and here, is that the government keeps referring to a single statute that governs. It says the judge's decision in the lower court was inconsistent with the statute. But there's not just one statute at issue and there's not just one section of one statute at issue. In the sense that TAA was passed and the regulations were implemented, there's over a 30-year history, both within the federal agencies and within any cases that consider the issue specifically, which say that the Buy America Act and the Trade Agreements Act overlay and overlap, not that one repeals the other. And that's something that simply has been ignored or talked around by the government. As we know, in procurements, central to the Trade Agreements Act, Section 2511, is the statement that we take the products that are currently preferred, that in the context of the Trade Agreements Act, those are the Buy America Act products. That was the predominant preference in place at the time the Trade Agreement Act was written. So we take products that are preferred, which are domestic items under the Buy America Act, but we decide what to do with the products of countries that have signed trade agreements and haven't signed trade agreements. So Section 2511 says, if it's a designated country and product from a trade-friendly country, we treat it equally, the preferences are waived. And the preferences are price adjustments. So if you're an offeror of a non-domestic product, your price gets moved up, so it's competitively disadvantaged. But those preferences are waived with respect to designated country products. But under 2511, anybody else's products are still subject to the preference. So an offer of a product of Russia or something will still receive a price detriment or disadvantage with respect to the domestic product. When you move to 2512, which includes a prohibition, you don't throw out 2511, and you don't throw out the Buy America Act. You get a different set of questions. So under 2512, you start with the domestic product, which is preferred. You treat the designated country products equally. You prohibit anything that's not domestic, that's the product of a foreign country under the Trade Agreements Act. And then it turns out, under the IBM case, there's a fourth category of product. You also have to deal with products that aren't domestic, but aren't foreign either, because they're substantially transformed in the United States. And as to that, the board in IBM said the following. So we know that you have to take a domestic product and treat designated country products equally, and that you have to exclude any other product that's foreign. But what do you do with a U.S. product that's not domestic? And it said you can't exclude it under the prohibition, because it only includes foreign products, but it's left to the agencies as to whether they're still covered by the Buy America preference. Point being that at all times, the boards and the courts have understood that the preferences from the BAA do apply, although in much more limited situations, both when Section 2511 of the TAA applies, and also when 2512 of the TAA applies. Okay. I think we're out of time. Thank you. Mr. Volk, you have two minutes. If I could convince the court of one thing, it would be that there is no overlap between the TAA and the BAA. That's just wrong. A product of India under the TAA cannot be a product of some other country under some other test. The reason why the court, I think, went astray on this is that the court didn't see that the TAA on its own is comprehensive. Rather than giving a boost or having a preference for a domestic product under the BAA, the TAA has an in-or-out system. Some have referred to it as a walled garden. You're either inside with the United States or you're outside. It specifies the entire universe of possibilities. So if under the statutory test, it's a product of India, it cannot be a product of the United States under some alternative test that interferes with the statute. If the court were to look at the ultimate question that's subject to discovery in the CIT rather than the APA style procurement review here, if the court were to look at that, it would be a problem under Section 1500 because there was never jurisdiction in the Court of Federal Claims to review that case that was already at the CIT, even putting aside the CIT's exclusive jurisdiction. The only remaining issue, then, is whether the court was right to think that the VA was supposed to be looking at some other question. And there just was no other question. The only question, and when the TAA applies in determining country of origin, has to be decided under the test that Congress gave in the statute. As Cedric's counsel mentioned, the veterans contracting case, the most fundamental difference between that case was that veterans contracting involved a SBA decision that the Court of Federal Claims was empowered to review, unlike the CBP decision, which can only be reviewed in the Court of International Trade. It's the statutory point that's key if it's a product of Indy under the statute. That's the end of the story. Okay, thank you, Mr. Cole. Thank both counsel and cases.